## No. 10,478.

### Ross, Executrix *v*. Brown, Sheriff, et al.

Decided February 5, 1923.

Action involving application of excess funds in the hands of a sheriff, derived from sale of lands under execution. Judgment for intervener.

*Affirmed.*

1. Real Property—*Contract—Record Notice.* The filing for record in the office of the county clerk and recorder, of a contract for the sale and purchase of land, is constructive notice to third parties of the rights of the purchaser.

2. *Execution Sale—Caveat Emptor.* Facts concerning the various transfers of real property by contract, trustee's and sheriff's sales, reviewed, and the rule of caveat emptor held to have no application to the sheriff's sale.

3. *Execution Sale—Subrogation.* The equitable owner of real property, in order to protect his interest therein, purchased it

at a sale under execution on the judgment of a third party, being forced to bid and pay an excessive amount therefor. Held, that under the facts of the case, he was entitled to be subrogated to both the rights of his grantor and those of the judgment creditor.

*Error to the District Court of Elbert County, Hon. Arthur Cornforth, Judge.*

Mr. H. O. NEVILLE, Mr. ALBERT S. FROST, for plaintiff in error.

Messrs. SNAVELY & SNAVELY, for defendants in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

MATTHIAS M. ROSS was the owner of two contiguous quarter sections of land in Elbert county, Colorado. He borrowed the sum of $600.00, giving his promissory note therefor, and secured payment of the same by a trust deed to the Public Trustee of Elbert county upon this land. After the trust deed had been filed with the county clerk and recorder, Ross entered into a contract with R. G. Catlin for the conveyance of one of these quarter sections, which adjoined Catlin's farm, and, upon its execution, Catlin entered into possession of the land, fenced the same, and, from time to time, made valuable improvements upon it. The contract was at once filed with the county clerk and recorder, and thereafter, under our statute, was constructive notice to third parties of Catlin's rights thereunder. As part of the consideration of sale, Catlin agreed to pay $400.00 of the indebtedness secured by the trust deed, and Ross was to pay the remainder. The trust note was not due and Ross could not then comply with his agreement to convey the same free of all incumbrances, but agreed to perform as soon as he could pay the note and secure a release of the trust deed. In order to complete the contract of sale, so far as it could be done at that time, Ross executed his warranty deed for the quarter section

included in the contract, and deposited the same in escrow with a bank, and, at the same time, Catlin deposited with the escrow holder $400.00 in money, which he was to pay on the trustee note. The escrow instructions were that when the trustee's note was paid and the proper evidences of a clear title were exhibited to the escrow holder, the $400.00 deposited by Catlin were to be delivered to Ross, or payee of the note, and the warranty deed to Catlin.

In due course the note became due and payable, and, although demand, from time to time, was made by Catlin upon Ross to pay the same and thus enable the latter to perform, Ross refused to pay it. Thus the status continued for nearly four years. In order to protect himself, and acting under the advice of counsel, Catlin made an offer to the holder to buy the note, and to pay the same and all interest and charges thereon. For some reason Ross had sufficient influence with the holder of the note—and exercised it—to prevent a sale to Catlin. At all events, the note-holder refused to sell the note, but demanded of the trustee that the latter should advertise and sell the property under the trust deed for a failure on the part of Ross, the maker, to pay the same. At the time fixed for the trustee's sale Catlin appeared and made a request of the trustee to offer for sale the quarter sections separately, and first to offer the one not included in his contract of purchase, and further stated that if the trustee would release his tract from the lien of the trust deed, and offer for sale the other, he would bid for the latter a sufficient sum to pay the full amount of the debt secured by the trust deed, and all costs and expenses. Through the influence of Ross, which was exercised, the trustee refused Catlin's offer, and proceeded, doubtless under the instruction of the note-holder, to make sale of both quarter sections of land on the one bid. Although Catlin's contract of sale had been recorded, and was constructive notice, Catlin was not at that time the legal owner of the land he had agreed to buy. If at the trustee's sale the property was bid off to a third person, Catlin, if his interest in the land gave him a right of re-

demption, could not make a partial redemption of the same, but, if he redeemed at all, must redeem as to all the property. He was so advised by his attorney, and that it was doubtful if he could make any redemption whatever, since he was not as yet the legal holder; and so Catlin bid at the trustee's sale, and the property was stricken off, and a certificate of sale was given, to him. Thereafter, one Clover, who was the attorney of Ross and apparently had been advising his client throughout these transactions, long after Catlin's contract of sale was on record, brought a suit against Ross for attorney's fees and Ross confessed judgment in the sum of $500.00, and thereafter, Clover, as such judgment creditor, redeemed from the trustee's sale.

As to the foregoing facts, there is no substantial controversy, and, as to the following facts, there was evidence which strongly tended to show, and the court must have found, that the judgment against Ross was secured by Clover with the understanding that it was to be used, as it was, in the interest of Ross and for the purpose of defrauding Catlin. Clover at once sued out a writ of execution under his judgment and proceeded thereunder to advertise and sell both quarter sections of land to satisfy his judgment. Prior to this time Ross had brought suit against Catlin asking for a decree setting aside the contract of sale. To the complaint in this action Catlin filed a counterclaim or cross-complaint, asking for a decree enforcing the contract and that the bank, the escrow holder of the instruments heretofore mentioned, be made a party to the action, which was done, and that, upon final hearing, a decree be entered directing the bank to deliver to Catlin the warranty deed, the proper allegations being made in the cross-complaint that Catlin had. fully complied with the terms of the contract of sale that were to be performed by him. This suit had not been tried or determined at the time of the sheriff's sale. Catlin had. been insisting upon its disposition, but Ross was interposing objections and secured a delay from time to time, so that Catlin, on the day of the execution sale, was not sure that he would succeed in his

cross-complaint and get his deed. Being, therefore, at the time of sale neither a judgment creditor nor the holder of a legal title, and being advised by his attorney that he might lose his interest in this land as a vendee, and having already taken possession of, and made valuable improvements upon, it, for the purpose of protecting his interests, and after he had unsuccessfully made to the sheriff a request similar to that he had theretofore made of the public trustee, Catlin bid at the sheriff's execution sale. Some person representing Ross was a competitive bidder and bid up the property beyond its value. After Catlin had made his final bid of about $3500.00, which was more than $1200.00 in excess of all that was due to Clover, he refused to bid further, whereupon the representative of Ross bid a considerably larger sum, and the same was stricken off to him by the sheriff. The representative then refused to complete the sale under his bid, and the sheriff accepted the next lower bid of Catlin. After the statutory period of redemption expired, the sheriff's deed was issued to Catlin for the premises in question.

There was sufficient evidence before the court to show, and presumably the court found, that the object of the one bidding in behalf of Ross, or his estate, was to compel Catlin to bid for the land more than it was worth, with no intention on their part to comply with their own bids. By such conduct Catlin was compelled to, and did, bid and pay to the sheriff more than $1200.00 in excess of the legal charges, and much more than the value of the land. In the meantime, and probably before the execution sale, Ross died and his widow was appointed as the executrix of his estate. She made demand upon the sheriff for this excess amount of about $1200.00 and Catlin also demanded the same. The sheriff refused to comply with either request, and the executrix brought this suit against the sheriff to recover this money, claiming that it belonged to her husband's estate, the legal title of the land being in him at his death. Catlin thereupon filed a petition of intervention

claiming this money as his property. In the meantime, and before final hearing herein, but after the execution sale, the Ross suit to set aside the contract of sale, and Catlin's cross-bill for a decree to enforce that contract, were tried and determined, with the result that the Ross complaint was dismissed, and a decree was entered sustaining the cross-complaint and directing the bank, which held Ross' deed in escrow, to deliver the same to Catlin, which was done, and the deed was placed on record. All of the foregoing facts, and other evidence, were produced before the district court in the instant action, and the findings were in favor of the intervener, Catlin, and against the executrix and the decree ordered the sheriff to turn over the money to the intervener. The executrix has brought the case here by this writ of error and asks for a *supersedeas.*

The mere statement of the foregoing facts renders discussion unnecessary, and the citation of authorities superfluous; for it abundantly appears therefrom that the judgment of the district court was right and should be affirmed. The executrix asserts ownership of the property in her husband's estate, and relies for a *supersedeas* and a reversal of the judgment upon that claim and the proposition that the rule of *caveat emptor* applies to a sheriff's sale, and that if Catlin, as vendee at the sheriff's sale, got nothing thereat by the sheriff's deed, he may not be awarded relief as against any of the other parties interested for his mistaken idea that he was getting a good title. The rule invoked has no application whatever to the facts of this case. It is not necessary for us to express an opinion, and the district court did not make any decision, as to whether or not Catlin got any title as the result of the sheriff's deed. Catlin relied at the trial in this action in the district court, as he does here, upon the proposition that, under his contract of sale with Ross, which was placed upon record, he became, insofar as concerns the parties to this contract, and as to all third persons whose rights attached after the record of his contract, the equitable owner of the quarter section of land included therein. He was not the legal owner,

however, either at the time of the sale under the trust deed, or the sale under the execution. For the reasons disclosed by the foregoing statement of facts, having been advised by his counsel that he might safely bid at the sheriff's sale, he did so with the result that he obtained a sheriff's deed for the property. It is altogether clear that any money that he bid at the sheriff's sale in excess of the amount necessary to cover the prior legal charges against this property, belonged to the equitable owner of the property sold. He, himself, unquestionably was the equitable owner, and, after the execution sale, and before the decree in this case was rendered, he became the legal owner thereof as the result of that decree of the district court, which ordered the warranty deed to this property to be delivered to him by the escrow holder. In other words, the excess amount which he, himself, paid the sheriff, in law and in equity, belonged to him, and not to his grantor or to the legal representative of the grantor, the executrix.

Under the equitable doctrine of subrogation, when Catlin advanced this money at the sheriff's sale, and acting under legal advice, although he did not recognize the superiority of the lien of the execution, which was satisfied out of the money which he paid at the sale, in making the bid and advancing the money, he did so in order to protect his own title, to prevent unnecessary law-suits, and to secure for himself, so far as it was possible, all outstanding claims against this property which he had bought from Ross and had paid for. Catlin, therefore, was entitled to be subrogated, both to the rights of his grantor, Ross, and to the rights, if any, of the judgment creditor, Clover, under the latter's judgment. *Capitol Nat. Bank v. Holmes,* 43 Colo. 154, 95 Pac. 314, 16 L. R. A. (N. S.) 470, 127 Am. St. Rep. 108; 37 Cyc., 446; Sheldon on Subrogation (2nd Ed.), pp. 12, 13, Sec. 9. The counter-claim and cross-complaint of Catlin in this suit introduced such equitable defenses to the complaint of the executrix, and the equities were unquestionably with him. There was enough in the testimony to show, and in order to sustain the judgment of the trial

court we may assume, that the court so found, that these attempts of adverse parties were made for the very purpose of injuring Catlin, who had fully complied with the contract of sale, and who, to protect his interests, was compelled to bid at the sheriff's sale an excessive amount, which, in equity, belonged to him. Under any conceivable theory, every available equitable doctrine should be applied in favor of the intervener instead of the executrix.

The application for *supersedeas* is denied, and the judgment affirmed.

MR. CHIEF JUSTICE TELLER and MR. JUSTICE SHEAFOR concur.